UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON LEMKE,<br><br>                    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No.  2:23-cv-00698-JDP (SS)<br><br>**ORDER**<br><br>GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 24 & 29 |

      Plaintiff, who suffers from bilateral knee osteoarthritis, lumbar and cervical spine degenerative disc disease, and right shoulder degenerative joint disease, challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  Both parties have moved for summary judgment.  ECF Nos. 24 & 29.  Because I find that the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's alleged symptoms and limitations, plaintiff's motion is granted, and the Commissioner's cross-motion is denied.

**Standard of Review**

      An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th

1   Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a

2   preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

3   support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

4       "The ALJ is responsible for determining credibility, resolving conflicts in medical

5   testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001)

6   (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

7   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v.*

8   *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court will not affirm on grounds upon

9   which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are

10  constrained to review the reasons the ALJ asserts.").

11      A five-step sequential evaluation process is used in assessing eligibility for Social Security

12  disability benefits.  Under this process, the ALJ is required to determine: (1) whether the claimant

13  is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or

14  combination of impairments) that qualifies as severe; (3) whether any of the claimant's

15  impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404,

16  Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the

17  claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704

18  n.3 (9th Cir. 2018).  The claimant bears the burden of proof for the first four steps of the inquiry,

19  while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d

20  949, 953-54 (9th Cir. 2001).

21                            **Background**

22      In August 2015, plaintiff filed an application for SSI, alleging disability beginning on April

23  1, 2012.  Administrative Record ("AR") 183-91.  After her applications were denied both initially

24  and upon reconsideration, plaintiff appeared and testified at a hearing before an Administrative

25  Law Judge ("ALJ").  AR 38-104. On December 20, 2017, the ALJ issued a decision finding that

26  plaintiff was not disabled.  AR 20-37.

27      Plaintiff requested review by the Appeals Council, but the request was denied.  AR 1-5,

28  182.  She then challenged the ALJ's decision by filing a complaint in District Court.  AR 1673-75.

On September 20, 2019, the assigned magistrate judge remanded the matter for further proceedings in accordance with the parties' stipulation to voluntary remand pursuant to 42 U.S.C. § 405(g). AR 1689.

The Appeals Council subsequently remanded the case to the ALJ (1) to address an incomplete evaluation of the opinion evidence, including the opinion of treating physician Dr. Daniel B. Dahle, M.D., and (2) to consider whether the ALJ and VE appropriately determined the requirements of plaintiff's past work. The Appeals Council also instructed the ALJ to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base, and to give further consideration to plaintiff's residual functional capacity, her alleged symptoms, and her past relevant work. AR 1693-98.

On remand, plaintiff appeared via telephone and testified before the same ALJ at a hearing on January 12, 2021. AR 1595-1648. On February 5, 2021, the ALJ issued a second denial, making the following findings:

> 1. The claimant has not engaged in substantial gainful activity since August 21, 2015, the application date.
>
> 2. The claimant has the following severe impairments: bilateral knee osteoarthritis, left greater than right; lumbar & cervical spine degenerative disc disease, and right shoulder degenerative joint disease.
>
> * * *
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> * * *
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she is able to climb ramps and stairs occasionally, but is never able to climb ladders, ropes or scaffolds. The claimant is able to balance and stoop frequently; kneel, crouch and crawl occasionally; and reach overhead with the right upper extremity occasionally. In addition, the claimant should avoid concentrated exposure to cold, vibration, and workplace hazards.

* * *

5. The claimant is capable of performing past relevant work as a checker and a home attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

* * *

6. The claimant has not been under a disability, as defined in the Social Security Act, since August 21, 2015, the date the application was filed.

AR 1573-94 (citations to the Code of Federal Regulations omitted).

Plaintiff submitted written exceptions to the ALJ's second denial. AR 1886-88. The Appeals Council denied the exceptions, and the ALJ's February 5, 2021, decision became the final decision of the Commissioner. AR 1553-58, *see* 20 C.F.R. § 416.1484. Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff argues that the ALJ's February 5, 2021, decision should be vacated for the following reasons: (1) the ALJ relied on vocational expert testimony that conflicted with the Dictionary of Occupational Titles without questioning the VE about "obvious discrepancies"; (2) the ALJ did not give clear and convincing reasons supported by substantial evidence for discounting plaintiff's testimony concerning her limitations; (3) the ALJ erred when formulating plaintiff's residual functional capacity by ignoring impairments, improperly weighing medical opinions, and failing to fully develop the record. ECF No. 24 at 6-7, 21-36.

I agree that the ALJ failed to properly consider plaintiff's alleged symptoms and limitations. Because remand is warranted on this issue, I decline to address plaintiff's remaining arguments.

**A. Overview of Plaintiff's Medical History**

The record indicates that plaintiff sought frequent medical care for pain in her shoulder, knees, and back. In July 2015, she was involved in a motor vehicle crash that resulted in injuries

4

to both knees and her right ankle. AR 1582, 336-40. MRI studies of plaintiff's right knee in August 2015 indicated a horizontal tear of the medial meniscus, and grade two to three chondromalacia of the medial joint space. AR 371, 1582. In September 2015, plaintiff had surgery on her right knee that included a partial medial meniscectomy and medial compartment debridement. AR 405, 1582.

In February 2016, plaintiff had arthroscopic surgery on her left knee that included chondroplasty of the medial femoral condyle and the tibial plateau and a partial medial meniscectomy. AR 1103. The surgery revealed a degenerative tear of the medial meniscus and "extensive" degenerative changes. AR 906, 1582. An MRI of plaintiff's left knee in May 2016 showed grade four chondromalacia of the medial joint space, grade three chondromalacia of the medial patellofemoral joint, and small joint effusion. AR 1128-29.

Plaintiff was prescribed a knee brace and the pain-relief medications Tramadol and Norco. *See, e.g.*, 451, 1434. Plaintiff also saw a chiropractor and attended physical therapy sessions to treat her pain symptoms. *See* AR 511, 1492-1552, 2157.

A May 2017 treatment note indicates that at a follow-up visit with Dr. Dahle, plaintiff complained of swelling, pain, and instability in her left knee. AR 1467. Exam findings showed tenderness along the medial joint line of the left knee, as well as crepitus and a lack of full flexion. AR 1469. Other findings included slightly decreased range of motion in the right arm, pain in the trapezius area, and localized swelling and stiffness in the back.[1] AR 1467-69. Although plaintiff's neurological motor exam demonstrated "no dysfunction," Dr. Dahle noted that she had an "abnormal" gait because "when she walks, she tends to look down to make sure she places her left leg." AR 1469.

Subsequent MRI and x-ray imaging reflected degenerative changes in plaintiff's right shoulder, left knee, and spine. Specifically, an x-ray of her right shoulder in August 2017 showed probable calcific tendinosis and narrowing of the AC joint with minimal inferior osseous spurring.

---

[1] In February 2014, prior to the filing date of plaintiff's SSI application, she had arthroscopic surgery on her right shoulder that included calcification needling and revealed a degenerative labral tear. AR 314-15.

AR 2194. Another shoulder x-ray in February 2020 showed diffuse osseous demineralization and probable calcific tendinopathy of the rotator cuff. AR 2204. Regarding the cervical spine, in 2018 an x-ray showed mild endplate spurring at C4 to C7, *see* AR 2196, while a cervical MRI showed annular bulging at C2 to C6, multilevel cervical canal stenosis, and foraminal narrowing. AR 2197-98. A lumbar MRI from 2019 showed the following: minimal annular bulging at L2-3; bilateral facet and legamentum flavum hypertrophy, and foraminal-lateral annular tears on the right and left sides at L4-5; and annular bulging and posterior spondylitic ridging, bilateral facet and legamentum flavum hypertrophy, and mild bilateral foraminal narrowing at L5-S1. AR 1943-44.

### B. Plaintiff's Subjective Symptoms

On September 5, 2015, plaintiff completed an Adult Function Report addressing how her conditions limit her activities. AR 239-47. To describe how she spends her days, plaintiff stated that she "clean[s] [her]self up the best [she] can" and "do[es] what [she] can around the house." AR 240. She also tries to go to physical therapy "on days [that she] can get there." *Id.* In the section about meals, she stated that she has the ability to stand in the kitchen for only short periods of time, and that meal preparation takes less than fifteen minutes. AR 241. For household chores, plaintiff stated that she is able to vacuum "in short periods" and do laundry "in short periods," and water her flowerpots. *Id*. Because she needs to take breaks, two loads of laundry can take her four hours to complete, and vacuuming her house can take two hours. *Id.* Describing her shopping activities, plaintiff stated that she only shops for groceries for twenty minutes each week, adding that "it hurts too much to walk and stand for very long." AR 242-43.

For hobbies and interests, plaintiff listed jogging, riding her bicycle, reading books, and watching movies, but stated that since her car accident she is no longer able to jog or cycle. AR 240, 243. In addition to the grocery store, the only other places that plaintiff goes to on a regular basis are doctor's appointments two times per week, physical therapy sessions three times per week, and the post office. AR 243. In the section seeking information about abilities, plaintiff stated that lifting, kneeling, walking, and standing "hurt[] terribly." AR 244. She also stated that she had been prescribed "braces/splints," which she uses every day. AR 245.

At the 2017 hearing, plaintiff testified that she has severe pain in her neck, lower back, and knee, and that, even with medication, the pain is at an intensity of eight or nine on a scale of one to ten. AR 1721, 1731-32. She is able to sit for thirty-five minutes before she needs to take a break by standing up to "let the blood flow in [her] legs." AR 1707-08. Because of back pain, plaintiff is able to walk for only ten or fifteen minutes. AR 1728-29. In response to questions about her activities, plaintiff testified that she shops for groceries with her roommate one day per week; she is able to manage her own hygiene and grooming except for bending over to clip her toenails; and that she no longer rides her bicycle or jogs. AR 1726-29. Plaintiff swims and rides a stationary bike for ten minutes as physical therapy. AR 1726, 1729-30. She has prescriptions for Tramadol and Norco for pain symptoms, but they are not effective. AR 1732. She also sees a chiropractor. AR 1733.

At the 2021 hearing, plaintiff testified that in addition to cervical and lumbar degenerative disc disease and degenerative joint disease in her right shoulder, she experiences pain and swelling in her ankle that began after her car accident. Although her ankle had improved with physical therapy, the symptoms returned before January 2020 and have increased in severity. AR 1613-15. She has pain in her right shoulder and neuropathy in her hands, and is unable to open a bottle of milk. AR 1617, 1622-24. She wears a brace on her right knee which is "the only way [she] can get around," although it "keeps [her] off balance." AR 1624. She is able to stand for only five or ten minutes before she needs to either lay down or sit down. AR 1618. When asked about grocery shopping, plaintiff testified that she orders her groceries online and that her friend brings the groceries to plaintiff's house. AR 1619. For pain relief, plaintiff takes Tramadol. She also uses patches and topical creams that "work for a little while, but they're not a cure all." AR 1618, 1624.

### C.    Legal Standard for Rejecting Symptom Testimony

When evaluating a claimant's testimony regarding subjective pain or symptoms, an ALJ follows a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*

(quotations and citation omitted).  If the first test is satisfied and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms by giving "specific, clear and convincing reasons" for the rejection.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations and quotations omitted).  Additionally, the ALJ must state findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

### B.      The ALJ's Credibility Determination

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  The ALJ then considered plaintiff's testimony, along with the statements in her Adult Function Report, and the statements made by plaintiff's friend in a Third Party Function Report, and found that their allegations were not entirely consistent with the record of evidence.  *Id.*  In rejecting plaintiff's claimed symptoms and limitations, the ALJ stated:

> Although the claimant and her friend alleged that the claimant had the ability to lift only 5 pounds and that she had significant exertional limitations with standing and walking, the medical evidence of record as a whole demonstrates that she has been able to perform a significant number of activities of daily living, including exercising regularly, cooking, doing household chores, and going shopping.

AR 1584.

The ALJ's reliance on the above-listed activities does not qualify as a clear and convincing reason supported by substantial evidence for rejecting plaintiff's subjective complaints.  As stated above, plaintiff reported that she only spends fifteen minutes to prepare meals because she has difficulty standing for longer periods of time, *see* AR 241, that she spends about twenty minutes shopping for groceries once per week, *see* AR 242-43, 1726, and that she is able to carry out household chores like vacuuming and laundry only by working for "short periods" and taking breaks.[2]  *See* AR 241.  The ALJ has not pointed out any specific contradictions between plaintiff's

---

[2] Plaintiff lives in a trailer, and, with rest breaks, it takes her two hours to vacuum the space.  AR 241, 1601, 1619.  Two loads of laundry can take her four hours.  AR 241.

alleged symptoms and the foregoing activities.³  Additionally, there is no indication that plaintiff spent a substantial part of her day performing these activities; neither did the ALJ explain how such activities relate to the demands of the workplace.  *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012), *superseded on other ground by* 20 C.F.R. § 404.1502(a); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that daily activities may support adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting"), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Vertigan v. Halter*, 260 F.3d 1044, 149-50 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").  In particular, grocery shopping is not even a "daily" activity, and there is no indication how this limited, infrequent event demonstrates the ability to function in a job setting, or that plaintiff's symptoms are less severe than alleged.⁴

As for plaintiff's exercise regimen, the record shows that she attended physical therapy for approximately one year, from October 2015 to October 2016.  *See* AR 1492-1552.  Once physical therapy ended, she continued to independently engage in therapeutic exercises—swimming and riding a stationary bike for ten minutes—to treat her symptoms. AR 1729-30; *see also* AR 1550 (October 11, 2016, letter from physical therapist to Dr. Dahle indicating that plaintiff is ready to continue her "independent home exercise program/gym program").  At that time, Dr. Dahle and an orthopedic surgeon agreed that plaintiff should undertake "vigorous" physical therapy that includes swimming.  *See, e.g.*, 1464.  Not only are plaintiff's physical therapy exercises in accordance with her treating doctor's recommendation, but the ALJ failed to sufficiently explain how such exercises are inconsistent with her claimed symptoms.  Additionally, activities such as

---

³ The court notes that plaintiff did not assert that she could lift only five pounds.  Rather, plaintiff's friend in the Third Party Function Report stated that he was "unsure of how many lbs. she can lift" and that in his opinion, she is capable of lifting "less than 5 lbs."  AR 221.  The friend also stated that plaintiff is unable to stand or walk for an extended amount of time, which is consistent with plaintiff's subjective complaints.  *See* AR 219.

⁴ Plaintiff testified at the 2021 hearing that she purchases her groceries online and no longer shops in the grocery store.  AR 1619.

swimming and riding a stationary bike for ten minutes do not necessarily reflect any capabilities that transfer to a work setting.[5]  A claimant "may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Vertigan*, 260 F.3d at 150 (emphasis in original).

Next, in rejecting plaintiff's symptom claims, the ALJ stated:

> Medical consultants also determined that she was able to perform light work with some postural, manipulative, and environmental limitations, which was consistent with objective medical findings of record showing her to have no limp when she walked, only slightly decreased motion of the cervical and lumbar spine, normal motor strength, and normal neurological findings.

AR 1584.  The ALJ does not elaborate by pointing out any particular aspect of the consultative physicians' opinions that undermines plaintiff's credibility, other than stating that the physicians' light work determination conflicts with plaintiff's asserted physical limitations.  Accordingly, the ALJ's reliance on the consultative physicians' opinions is not a sufficiently specific reason to disregard plaintiff's claimed symptoms.  The remaining ground cited by the ALJ is that the noted objective findings do not support plaintiff's allegations of pain and physical limitations.  However, the lack of objective medical evidence to corroborate subjective complaints of pain cannot, by itself, support an adverse credibility determination.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.") (citation omitted).

---

[5] To the extent the ALJ also relies on notations in the record stating that plaintiff's exercise activities include "short jogs," this does not amount to a clear and convincing reason to discredit her symptom testimony.  The reference to "short jogs" is found in plaintiff's "social history" that is stated on a multitude of progress notes from plaintiff's chiropractor: "Social History: Patient admits exercising regularly: walking, biking, short jogs." *See, e.g.*, AR 511.  This same language is included in all of plaintiff's chiropractor records, spanning from November 2013 to October 2019. *See* AR 511, 2157.  Under these circumstances, it appears that plaintiff's social history reflects what she was able to do in the past rather than her physical abilities during the relevant time period.

### C. Remand for Further Proceedings

Because the ALJ's rejection of plaintiff's subjective complaints was not based on clear and convincing reasons supported by substantial evidence in the record, the matter must be remanded for further consideration. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted); *Treichler v. Comm'r of Social Sec.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

### Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 24, is granted.

2. The Commissioner's cross-motion for summary judgment, ECF No. 29, is denied.

3. The matter is remanded for further proceedings consistent with this order.

4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated: September 26, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE